**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aspect Systems, Inc., | No. CV 06-1620-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Lam Research Corporation, et al., | |
| Defendants. | |

The court has before it Defendants' Motion to Dismiss, Doc. # 5, Plaintiff's Opposition Brief, Doc. # 6, Defendants' Reply, Doc. # 7, and Plaintiff's Complaint, Doc. # 1.

**I.    Background**

Plaintiff Aspect Systems, Inc., is an Arizona corporation that operates in the after market for AutoTech systems parts. Defendant Lam Research Corporation is a Delaware corporation that supplies wafer fabrication equipment and services to the semiconductor industry. In February 2002, the parties entered a non-disclosure agreement and commenced negotiations for a supply contract.

Aspect alleges that, during negotiations leading up to the contract, Lam made a series of oral representations concerning the nature of its obligations. Lam purportedly represented (1) that all machine parts were currently in use and available for resale by Aspect, (2) that the royalty was calculated on the basis of current parts sales from Lam to Aspect, and (3) that

Lam would abandon business in favor of Aspect. According to Aspect, Lam also favorably depicted future business prospects in order to induce Aspect's entry into the agreement.

The negotiations culminated in a written contract that the parties signed on November 8, 2002. Under its terms, Lam was to supply Aspect with the parts and licenses necessary to manufacture, refurbish, service, and repair AutoEtch and DryTek machines. In exchange, Aspect promised to pay for the supplies at prices set by Lam, and to pay a royalty in partial consideration for the required licenses. Aspect represented in the contract that it was not relying on any representation or warranty from Lam in making its decision to purchase the machine supplies, and that it would not hold Lam responsible for any latent or patent supply defects. Lam in turn represented that it had been using the supplies in the manufacture, service, and repair of AutoEtch and DryTek machines, and that it had no actual knowledge of defects or patent infringements attributable to the supplies.

The Complaint avers that Lam engaged in a series of acts to defeat the parties' intent under the contract. Aspect claims that Lam has supplied defective parts, withheld useful parts, misrepresented sales to inflate royalty payments, forced Aspect to pay more than once for the same supplies, and failed to cease competition with Aspect in the AutoTech industry. As a result of Lam's actions, Aspect claims that it has lost at least $250,000 per quarter in revenue since January 2003 and an additional $1.8 million in connection with payments made for defective supplies.

After Aspect discovered Lam's alleged improprieties, the parties met in June 25, 2004 to amend their original contract. At that time, Lam allegedly promised to rectify past wrongs and fulfill its obligations in the future. The resulting amendment reaffirmed the parties' original obligations under the November 8 contract and obligated Lam to provide remaining machine inventory to Aspect. Nevertheless, Lam purportedly continued to breach the agreement in an effort to force Aspect out of business.

Based on the foregoing allegations, Aspect now asserts eight causes of action: (Count I) breach of contract, (Count II) breach of the covenant of good faith and fair dealing, (Count III) fraud and deceit, (Count IV) conversion, (Count V) unjust enrichment, (Count VI)

tortious interference with contract, (Count VII) tortious interference with business relations, and (Count VIII) injunction. Doc. # 1. Defendants argue that Counts II through VIII should be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.     Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (citations and internal quotation marks omitted). When analyzing a complaint for failure to state a claim, all factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir. 1994). All reasonable inferences are to be drawn in favor of the plaintiff. *Jacobsen v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997). "If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

When the complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citations omitted). Leave to amend is properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992) (citations omitted).

## III.    Analysis

### A.     Count II: Implied Covenant of Good Faith and Fair Dealing

Arizona "law implies a covenant of good faith and fair dealing in every contract." *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986). The covenant's purpose is to ensure that "neither party will act to impair the right of the other to receive the benefits

1 which flow from their agreement or contractual relationship." *Bike Fashion Corp. v.
2 Kramer*, 202 Ariz. 420, 423, 46 P.3d 431, 434 (Ct. App. 2002). A party can breach the
3 covenant "both by exercising express discretion in a way inconsistent with a party's
4 reasonable expectations and by acting in ways not expressly excluded by the contract's terms
5 but which nevertheless bear adversely on the party's reasonably expected benefits of the
6 bargain." *Id.* at 424, 435.

7 Citing *Bike Fashion*, Defendants argue that Count II should be dismissed because a
8 party to a contract cannot breach the implied covenant merely by failing to comply with one
9 of the contract's express terms. In Defendants' view, a party may breach the covenant only
10 insofar as the contract is silent with regard to disputed conduct. Defendants' argument
11 implicates what Arizona courts have described as a "turbid" doctrinal relationship between
12 express contract terms and the implied covenant. *Id.* at 423, 434.

13 Defendants' position rests on the soundest reading of Arizona law. Arizona courts
14 have only clearly identified two ways in which a party may breach the implied covenant. *See*
15 *Bike Fashion Corp.*, 202 Ariz. at 424, 46 P.3d at 435.[1] Breach of an express term in a
16 contract is not one of them. Because Plaintiff has not explained how Defendants have
17 breached the implied covenant other than through the breach of an express contractual term,
18 Plaintiff's argument fails. Plaintiff will be granted leave to amend Count II if it wishes to
19 attempt to plead breach of the implied covenant by some act other than the direct breach of
20 an express contractual obligation.

21 **B.   Count III: Fraud and Deceit**

22 Federal Rule of Civil Procedure 9(b) states in part that in "all averments of fraud or
23 mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

---

[1] Plaintiff's position that a party may breach the implied covenant simply by breaching an express term rests on a far more labored interpretation of the case law. *Bike Fashion* never addresses the issue, and other cases support Plaintiff's position only insofar as they fail to expressly rule against it. *See, e.g.*, *Wells Fargo Bank v. Arizona Laborers*, 201 Ariz. 474, 491, 38 P.3d 12, 29 (2002).

- 4 -

Fed. R. Civ. P. 9(b). The requirement of particularity "has been interpreted to mean the pleader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Miscellaneous Serv. Workers v. Philco-Ford Corp.*, 661 F.2d 776, 782 (9th Cir. 1981). The purpose of the requirement is to ensure that allegations of fraud are specific enough to give defendants an opportunity to prepare an adequate answer. *Bosse v. Crowell*, 565 F.2d 602, 611 (9th Cir. 1977).

Defendants argue that Count III should be dismissed because Plaintiff failed to plead fraud with the level of particularity required by Rule 9(b). The court agrees. Although Plaintiff alleged the content of Defendants' fraud with sufficient particularity, Plaintiff failed to explain specifically who perpetrated the fraud, when it was perpetrated, and where it was perpetrated. Lacking these details, Defendants lack sufficient notice to prepare their defense. Because the lack of specificity may be cured, however, leave to amend Count III will be granted.

### C.      Count IV: Conversion

Conversion is an "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Focal Point, Inc. v. U-Haul Co.*, 155 Ariz. 318, 319, 746 P.2d 488, 489 (Ct. App. 1986). Under the economic loss rule, a contracting party may not recover economic damages in tort unless there is an accompanying physical harm, "either in the form of personal injury or secondary property damage." *Carstens v. City of Phoenix*, 206 Ariz. 123, 125, 75 P.3d 1081, 1083 (Ct. App. 2003). This rule "stems from the principle that contract law and tort law each protect distinct interests." *Id.* at 126, 1084. Whereas contract law protects expectancy interests, tort law seeks to "protect the public from harm to person or property." *Id.*

Defendants argue that Plaintiff's conversion claim should be dismissed, in part because of the economic loss rule, and in part on the theory that Defendants cannot be liable for conversion when Plaintiff did not have a right to control the disputed property in the first

- 5 -

place. Plaintiff responds by arguing that its conversion claim is merely an alternative theory of relief offered in case its contract claim is unsuccessful. Plaintiff also contends that any right to possession, even if not formal title, is sufficient to establish conversion, and that it obtained such a right under the doctrine of equitable conversion.

Plaintiff's responses fall short. The economic loss rule does not bar all tort claims that are accompanied by exclusively economic damages regardless of the legal relationship between the parties, as Defendants contend, but it does bar claims among contracting parties for loss of benefit of the bargain, inadequate value, and loss of profit. *See QC Constr. Prods. v. Cohill's Bldg. Specialties, Inc.*, 423 F. Supp. 2d 1008, 1016 (D. Az. 2006); *Carstens*, 206 Airz. at 125 n.2, 75 P.3d at 1083 n.2. Because Plaintiff alleges breach of contract and has not claimed injury other than economic damages, its conversion claim cannot succeed under the rule.

Count III also fails because, as a matter of law, Plaintiff errs in alleging that title to the undelivered goods passed through the mere formation and amendment of the contract. Unless otherwise explicitly agreed, title only "passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods." A.R.S. § 47-2401(2). Because the contract is silent on the passage of title and Defendants have not completed physical delivery of the disputed property, title has not passed. While interference with some rights to possession other than title may suffice for the tort of conversion, a solely contract-based expectancy of future possession is insufficient. *See, e.g.*, *Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 166 Ariz. 333, 335, 802 P.2d 1032, 1034 (Ct. App. 1990) (explaining that an action for conversion may be brought by "one who had the right to immediate possession of the chattel at the time of the alleged conversion," and citing only mortgagees and conditional sellers after default as examples of individuals who fit such a description).

Finally, Plaintiff's invocation of the doctrine of equitable conversion is irrelevant. That doctrine addresses ownership interests flowing from contracts for the purchase or sale

of real property, not contracts concerning chattels. *See Smith v. Tang*, 100 Ariz. 196, 203, 412 P.2d 697, 702-03 (1966) ("Under well established law, where an agreement contains unconditional promises to buy and sell real property the doctrine of equitable conversion applies."). Even with respect to real property, the doctrine has nothing to do with tort liability for conversion as against the seller.

Because these defects go to the core of Plaintiff's attempt to label a routine failure of consideration and refusal to perform a contract as also constituting a tort, amendment could not cure Count IV. Count IV is accordingly dismissed with prejudice.

**D.     Count V: Unjust Enrichment**

"Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Trustmark Ins. Co. v. Bank One*, 202 Ariz. 535, 541, 48 P.3d 485, 491 (Ct. App. 2002). To establish a claim for unjust enrichment, a party must show: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy." *Id.*

An important limitation on the this theory of relief is that "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Brooks v. Valley Nat'l Bank*, 113 Ariz. 169, 174, 548 P.2d 1166, 1171 (1976). In that situation, if enrichment is the result of non-compliance with contractual obligations, breach of contract is the permitted remedy. On the other hand, if enrichment is the result of conduct permitted by the contract, it is not unjust. *Trustmark*, 202 Ariz. at 542, 48 P.3d at 492.

Defendants argue that Count V should be dismissed because the presence of a contract that governs the relationship between the parties renders the doctrine of unjust enrichment inapplicable. Plaintiff responds only by arguing that it has pleaded unjust enrichment as an alternative to its claim for breach of contract.

Plaintiff's response is unconvincing. Regardless of whether the Complaint has in fact pleaded Count V as an alternative to Count I, Plaintiff has been unable to articulate a basis for unjust enrichment that does not hinge on Defendants' alleged breach of contract. The Complaint appears to make Plaintiff's unjust enrichment claim completely dependent upon breach of contract by stating that "in breaching the agreements . . . LAM has profited wrongfully from the retention and sale of parts." Doc. #1 at ¶50. Even at oral argument, Plaintiff was unable to explain how the alleged unjust enrichment would exist in the absence of a contractual obligation. Thus, *Trustmark* and *Brooks* apply, and Count V fails. The Count is dismissed with prejudice because Plaintiff is unable to allege any facts to support its claim.

## E.     Counts VI & VII: Tortious Interference With Contract and With Business Expectancy

To make a prima facie case for tortious interference, a plaintiff must show (1) the existence of a valid contractual relationship or business expectancy; (2) the interfering party's knowledge of the relationship or expectancy; (3) intentional and improper interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Miller v. Hehlen*, 209 Ariz. 462, 471, 104 P.3d 193, 202 (Ct. App. 2005). Whether a defendant's interference is "improper" is determined by factors such as the defendant's conduct and motive, the interests of the plaintiff, the causal proximity or remoteness of the defendant's conduct to the interference, and the relationship between the parties. *See Bar J Bar Cattle Co. v. Pace*, 158 Ariz. 481, 483, 763 P.2d 545, 547 (Ct. App. 1988).

Defendants argue that, in light of the contractual origin of Plaintiff's right to the withheld chattels, Counts VI and VII should be dismissed because of the economic loss rule. In the alternative, they add that, absent a contractual obligation to supply Plaintiff, Defendants' "competition privilege" precludes liability for tortious interference with business expectancy when the purpose of the interference is at least in part the advancement of

economic interests. *See Miller*, 209 Ariz. at 471, 104 P.3d at 202.  Plaintiff responds that the claims should survive because Defendants' conduct "would be subject to a tort claim in the absence of any contract" between the parties, Doc. #6 at lines 26-27, and because the competition privilege does not extend to justify intentionally abusive conduct.

No amendment to the Complaint could save Counts VI and VII.  In the presence of a contractual relationship between the parties, the economic loss rule bars the claims because Plaintiff has alleged only economic damages.  *See Carstens*, 206 Ariz. at 125, 75 P.3d at 1083.  If Defendants' alleged breach of contract could also constitute tortious interference, plaintiffs everywhere could obtain tort remedies for even traditional contract-based claims.  The court is not aware of any Arizona cases that support such an outcome.

Counts VI and VII also fail in the absence of a contract.  Plaintiff has been unable to articulate a separate basis for these claims.  Without a contract, Defendants would have had no obligation to transfer parts to Plaintiff or otherwise cooperate to sustain the viability of Plaintiff's business.  Moreover, even if Defendants ceased to deliver for the sole purpose of destroying Plaintiff's business, the competition privilege permits such action as a form of competitive market behavior.  *See Miller*, 209 Ariz. at 471, 104 P.3d at 202.  Because Counts VI and VII fail for reasons that cannot be overcome by amendment to the Complaint, Plaintiff's tortious interference claims are dismissed with prejudice.

**F.     Count VIII: Injunction**

To prevail on a motion for a preliminary injunction, a plaintiff "must demonstrate either (a) probable success on the merits combined with the possibility of irreparable injury or (b) that she has raised serious questions going to the merits, and that the balance of hardships tips sharply in her favor."  *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003).

Defendants argue for dismissal of Count VIII on the ground that a preliminary injunction is not a separate cause of action, but rather a remedy that must be supported by a

"separate cognizable claim of unlawful conduct for which relief can be granted." Doc. #5 at lines 17-18.  They assert that because there is no underlying claim to support the injunction, Count VIII must be dismissed.

The court declines to grant Defendants' motion with respect to Count VIII. Given the allegations in the Complaint, it does not appear "beyond doubt" that Plaintiff will be unable to meet the requirements for a preliminary injunction.  Count VIII incorporates preceding claims by reference and alleges that Defendants threaten to cancel licenses, transfer business to a third party, and use their market position to destroy Plaintiff as a business.  Doc. #1 at ¶60.  All of the cited threats are allegedly further manifestations of the conduct giving rise to the claims raised earlier in the Complaint.  Plaintiff also asserts irreparable injury in the event that a preliminary injunction is not issued. *Id.* at ¶61.  As several of Plaintiff's claims survive Defendants' motion to dismiss, it is possible that Plaintiff will be able to show injury sufficient to warrant the requested relief.  Plaintiff's organizational choice to locate the request for injunctive relief in a separate count of the Complaint does not vitiate the merits of that request.  Defendants' motion is therefore denied with respect to Count VIII.

Accordingly,

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss, Doc. #5, is hereby GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Counts IV, V, VI, and VII of the Complaint, Doc. # 1, are dismissed with prejudice.

IT IS FURTHER ORDERED that Counts II and III are dismissed without prejudice and with leave to amend the Complaint by October 3, 2006.

/ / /

/ / /

/ / /

- 10 -

IT IS FURTHER ORDERED that Defendants' Motion is denied with respect to Count VIII.

DATED this 19th day of September 2006.

_____
Neil V. Wake
United States District Judge